UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

              Plaintiff,

vs.                                    Case No.   2:05-cv-306-FtM-29DNF

STOCK BUILDING SUPPLY, INC.,
formerly known as Carolina Holdings,
Inc., doing business as Stuart
Lumber Co.,

              Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. #49), filed on October 3, 2006.  Plaintiff filed a Response on October 20, 2006.  (Doc. #50.)  The parties submitted deposition transcripts, affidavits and other exhibits in support of their respective arguments.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, 477 U.S. 242,

248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

**II.**

Viewed in the light most favorable to Plaintiff, the summary judgment facts are as follows: Louis Schley (Schley), an African-American male, was hired by defendant Stock Building Supply f/k/a Carolina Holdings, Inc., d/b/a Stuart Lumber Co. (defendant or

Stock Building) in July 1999. In March 2000, Stock Building hired Robert Dunn to serve as the Rebar Division's Production Manager, where he became Schley's direct supervisor. Dunn had been Schley's direct supervisor on two previous occasions while employed at American Steel. (Docs. #50-3, p. 11; #50-28, pp. 59-63.) In August 2001, Stock Building informed Schley that he was being promoted to Production Manager. (Docs. #1, ¶7(b); # 49-16, pp. 3-4.) In the Fall of 2001, Schley was moved into Dunn's position as Production Manager, with the promotion being announced to the remainder of the Rebar team in January 2002. (Doc. #50-3, p. 39.) Schley assumed Dunn's position, moved into Dunn's office, and performed the job duties and responsibilities which were previously performed by Dunn. (Docs. #50-3, pp. 41-42; #50-15, ¶7-8.)

By March 2002, Schley had not received the pay increase commensurate with his promotion, despite repeatedly advising Defendant that the wage increase was not reflected in his pay. Schley and his wife met again with Baroni (the Location Manager), Dunn and Brissette (Baroni's replacement) in July 2002 where the issue of the pay raise was discussed. (Docs. #50-33, pp. 65-68; #50-24, pp. 34, 46-48.) At that time Schley was informed that he had already received the salary increase, i.e., he was converted from an hourly employee to a salaried one. (Doc. #50-33, pp. 65-68.) During that same time period 2001-2002, two non-black employees, Michael Dubay and Richard Moretti, were promoted and

received the wage increases associated with their promotions without delay. (Docs. #50-17; #50-18.)

On February 26, 2003, the EEOC Commission filed a discrimination charge against Defendant. On July 1, 2005, the EEOC filed a complaint in federal court pursuant to § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(1) alleging that defendant violated Title VII through intentional disparate treatment discrimination resulting from Defendant's unlawful employment practices. Additional factual allegations are set forth below as needed.

### III.

#### A.  Timeliness of Claim

Defendant argues that plaintiff's claim is time-barred because Schley failed to file a timely charge with the EEOC. Defendant asserts that Schley's complaint stems from a "one time, discrete discriminatory pay act that allegedly occurred in January 2002." (Doc. #49-1, p. 8.) Because Schley filed his charge with the EEOC in February 2003, defendant contends that Schley's filing occurred beyond the prescribed 300-day limitations period, which expired in November 2002. Consequently, Plaintiff is barred from bringing its claim. (Doc. #49-1, p. 10.)

Plaintiff responds that "each pay check that Schley received after his promotion was a direct result of ongoing discrimination." (Doc. #50-1, pp. 15-16.) Plaintiff also argues that the statue of

limitations is subject to equitable tolling in this case because Schley was led to believe that he would receive the pay raise. (Id. at 15.)  For these two reasons, Schley argues that the discrimination charge was filed in a timely manner.

Title VII requires that "in a deferral state such as Florida, (the complaint with the EEOC) must be filed within 300 days of the last discriminatory act."  EEOC v. Joe's Stone Crabs, 296 F.3d 1265, 1271 (11th Cir. 2002), cert. denied, 539 U.S. 941 (2003)(citing 42 U.S.C. § 2000e-5(e)(1)).  Only those practices that occurred within 300 days of the operative EEOC charge can form the basis for Title VII liability.  Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1178 (11th Cir. 2005), cert. granted, 126 S. Ct. 2965 (2006).

Where a continuing violation is found, a plaintiff can recover for any violations for which the statute of limitations has not expired.  Beavers v. American Cast Iron Pipe Co., 975 F.2d 792, 796 (11th Cir. 1992).  In determining whether a discriminatory employment practice constitutes a continuing violation, the Eleventh Circuit distinguishes between the consequence of a one time violation and the continuation of that violation.  Thigpen v. Bibb Cty. Georgia Sheriff's Dep't., 223 F.3d 1231, 1243 (11th Cir. 2000); Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir. 1993).  Only a continuation of the discriminatory employment practice may constitute a continuing violation.  Id.

The Court finds that plaintiff's claim of disparate treatment

-5-

based on race is one that constitutes a violation which continued until his separation from defendant on or about December 2003. Plaintiff's claim is analogous to the disparate salary and insurance coverage claims found in Bazemore v. Friday, 478 U.S. 385 (1986), and Beavers v. American Cast Iron Pipe Co., 975 F.2d 792 (11th Cir. 1992). In Bazemore, for example, the Supreme Court held that the North Carolina Agricultural Extension Service's perpetuation of the salary disparities constituted a continuing violation of Title VII. See id. at 395. The Court stated that "each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." See id. at 395-96.

Furthermore, it would be reasonable for a jury to determine that the adverse action took place in July 2002, when Schley was unequivocally informed that Stock Building's position was that he had already received his pay raise, thus making the 300 day deadline sometime in late April early May 2003. (Doc. #50-33, p. 66.) Up until the July 2002 meeting, Schley asserts that he continuously complained to various superiors who continuously assured him that they would attempt to rectify the problem with his pay. (Doc. #49-16, pp. 4-5.) In Wright v. AmSouth Bancorp., 320 F.3d 1198, 1201 (11th Cir. 2003), the Court reiterated its position that "a 'final decision' that remains uncommunicated to the terminated employee has no impact on the statutory filing

deadline." In the present case there is a genuine issue of material fact as to when Stock Building informed Schley clearly that he had not received a promotion and/or a pay raise. Therefore the Court finds that Plaintiff filed a timely complaint.

**B.  Race Discrimination *Prima Facie* Case**

Title VII was created to protect against discrimination on the basis of, among other classifications, race, gender or alienage. In employment discrimination cases, the plaintiff must show that defendant intentionally discriminated against him, a burden that remains at all times with plaintiff. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, (1981). Plaintiff must first present a *prima facie* case of discrimination by either: (1) showing direct evidence of discrimination; (2) satisfying the scheme for circumstantial evidence of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or (3) by demonstrating, through statistics, a pattern of discrimination. Alphin v. Sears, Roebuck & Co., 940 F.2d 1497 (11th Cir. 1991).

**1.  Direct Evidence**

The Court finds that plaintiff has not presented direct evidence of race discrimination. "Direct evidence" of discrimination has been defined by the Eleventh Circuit as "evidence from which a trier of fact could reasonably find that the defendant more probably than not discriminated against the

plaintiff on the basis of a protected personal characteristic." Wright v. Southland Corp., 187 F.3d 1287, 1300 (11th Cir. 1999). Direct evidence reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., 196 F.3d 1354, 1358 (11th Cir. 1999), cert. denied, 529 U.S. 1109 (2000) (quotations omitted); see also Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). To meet the definition of "direct evidence," the evidence must indicate that the adverse employment decision was *actually* motivated by the decision maker's racial discrimination. See Damon v. Fleming Supermarkets of Fla., 196 F.3d at 1358-59. Thus, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]," will constitute direct evidence of discrimination. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990) (internal citations and quotations omitted).

The only probative piece of direct evidence provided by Schley is an affidavit submitted by his former coworker Celso Hernandez. The affidavit provides in relevant part:

> I have heard RJ Dunn shout, when he would get angry, that he did not like Blacks or Hispanics. He referred to the Hispanic employees as "Fucking Indios." I was at a meeting in 2002 when RJ Dunn told the Hispanic employees in the rebar department that they would have to stay and work overtime (the other employees were allowed to go home on time.) RJ said that if we (Hispanic employees) did not like it, we could go back to picking tomatoes. . .

>        RJ Dunn also mocked a Haitian employee named Harry
>        Lewis about his accent.  (Doc. #51-2, ¶9.)[1]

The defense responded by submitting another affidavit in which Hernandez retracted the above statement, explaining that he did not speak or read English well, and that he signed his prior affidavit without understanding its content.[2]  (Doc. #54-2, pp. 2-3.) Plaintiff asserts that the only reason for the retraction is that Stock Building threatened to terminate Hernandez. (Doc. #57-1, p. 2.)

The Court finds that the affidavit does not constitute direct evidence of race being the basis for denying Schley the pay raise. There is no indication as to when Hernandez heard Dunn make these comments, or if they were related to Dunn's decision not to give Schley the increase in pay.  Furthermore, the remaining statements relate to Hispanics and not to the Plaintiff's race, and thus have no direct bearing on this case.  Thus, the Court finds no direct evidence of discrimination based on race.

### 2.   *McDonell Douglas* Analysis

The Court now considers whether circumstantial evidence exists.  McDonnell Douglas, 411 U.S. 792.[3]  Under the McDonnell

---

[1] The Court notes that the affidavit was listed as Exhibit Number 43 for Document 50, when in fact it was an exhibit to Document 51.

[2] The Court notes that the affidavit goes on to indicate that Schley offered Hernandez $10,000 to testify on his behalf.  For purposes of this motion, the court will not address the issue of witness tampering at this time.

[3] In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the
(continued...)

Douglas standard of proof, a plaintiff must first establish a *prima facie* case of intentional discrimination. Id. at 802. If plaintiff meets this burden, there is a presumption that intentional discrimination has occurred. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254 n.7; Crawford v. Western Elec. Co., 745 F.2d 1373, 1376 (11th Cir. 1984).

Under the first step of the McDonnell Douglas test, plaintiff must establish the following elements of a disparate treatment claim: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) defendant employer treated similarly-situation employees outside of plaintiff's classification more favorably; and (4) plaintiff was qualified to do the job. See Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). It is clear that Schley, an African-American male, meets the first element. Defendant contends that plaintiff failed to satisfy the second, third and fourth elements.

    **i.  Adverse Employment Action**

With respect to the second element, Plaintiff asserts that Stock Building promoted him to the position of Production Manager, which entailed an increase in pay, and took actions to formalize

---

[3](...continued)
Supreme Court established a framework for the allocation of the burden of production and an order for the presentation of proof in cases dealing with discriminatory treatment in employment. See Howard v. BP Oil Co., 32 F.3d 520 (11th Cir. 1994).

the promotion, including providing Schley with a cell phone (Doc. #50-3, p. 35), business cards (Doc. #50-26) and announcing the promotion to the entire Rebar Department (Docs. #50-15, ¶7; #51-3, ¶6). Stock Building denies having promoted Schley to the position of Production Manager and therefore he was never entitled to a raise.

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party, in this case the plaintiff. Johnson v. Booker T. Washington Broad. Servs., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)). The summary judgment rule applies to employment discrimination cases just as in other cases. Chapman v. A.I Transport, 229 F.3d 1012, 1026 (11th Cir. 2000)(*en banc*). Therefore, viewing the facts in the light most favorable to the plaintiff, the Court finds that Schley satisfied the second element. A reasonable jury could find that the plaintiff was promoted, as evidenced by Schley receiving a cell phone, business cards (ordered by Dunn's supervisor)

identifying him as Production Manager, and being given Dunn's old office. (Docs. #50-3, pp. 35, 59; #50-5, pp. 13-15.)

### ii. Similarly Situated Employees

With respect to the third element, Plaintiff asserts that both Dubay and Moretti are similarly situated to Schley, in that both were promoted in 2001 and immediately given the associated raise in pay. Plaintiffs argue that although both Dubay and Moretti worked in different departments (lumber and mill-work respectively) and had different first line supervisors from Schley, their promotions were approved by the same individual, Chris Baroni, the Location Manager. Furthermore, Moretti's promotion was for the equivalent position to that held by Schley, i.e. Production Manager. (Doc. #50-17.)

Stock Building responds that neither Dubay nor Moretti are similarly situated to Schley. Dubay and Moretti worked in different departments, reporting to different supervisors than Schley. Moreover, Dubay was an hourly employee, whereas Schley was salaried. Defense also posits that Plaintiffs have not produced any evidence that shows that Schley's job duties were similar to either those of Dubay or Moretti, or that they shared the same disciplinary history. (Doc. #54-1, p. 4.)

In order to show a *prima facie* case of disparate treatment, Schley has the burden of showing that similarly situated employees were treated differently, in this case, that they received a pay

raise with their promotion. "In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001), cert. denied, 534 U.S. 976 (2001). In other words, Plaintiff must be "matched with a person or persons who have very similar job-related characteristics and who are in a similar situation" to plaintiff. MacPherson v. Univ. of Montevallo, 922 F.2d 766, 775 (11th Cir. 1991); see also Ren v. Univ. of Cent. Florida Bd. Of Trustees, 390 F. Supp. 2d. 1223, 1229-30 (M.D. Fla. 2005), aff'd, 179 Fed. Appx. 680 (2006).

Viewing the facts in the light most favorable to the Plaintiff, the Court finds that Schley has properly identified one similarly situated individual. The Court agrees with Stock Building, that Dubay is not similarly situated to Schley for the above mentioned reasons. However the Court finds Moretti to be similarly situated to Schley. Moretti and Plaintiff share several attributes, including both being salaried employees in the Fort Myers branch and having been promoted to the same position of Production Manager during the same general time period. The pay raises associated with their promotions would have been processed by the same individuals. (Doc. #49-1, pp. 24-5.) The 11th Circuit has stated that "exact correlation is neither likely nor necessary, but the cases must be fair congeners." Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999)(citing Dartmouth Review v. Dartmouth

-13-

College, 889 F.2d 13, 19 (1st Cir. 1989)). The Court finds that Schley has properly identified a similarly situated individual outside his protected class whose promotion associated pay was processed immediately.

### iii. Qualification for the Position

Defendant contends that the plaintiff was not qualified to be the Production Manager. They contend that Schley lacked the experience and knowledge to lead the Rebar Department. Stock Building cites the difference in experience between Dunn and Schley to explain that they would not have promoted Schley to replace Dunn. (Doc. #49, p. 19.) Stock Building also relies on Schley's disciplinary history to show that based on the disciplinary history he would not have been promoted.

The Court finds that a reasonable jury could find that the plaintiff was qualified for the job. Schley had been in the Rebar industry since 1997. (Doc. #50-3, p. 8.) Throughout his employment history he had held several management type positions supervising individuals. (Docs. #50-2, pp. 58-60, 62-64; #50-3, pp. 7-9.) It is also undisputed that Schley was promoted twice by Stuart Building, including once to Shop Supervisor in the Rebar division, despite his disciplinary history. (Docs. #49-9; #49-10; #50-3, p. 31.) Hence, whether Schley was qualified to become Production Manager of the Rebar Department presents a jury question.

## C. Legitimate Non-Discriminatory Reasons

Having satisfied all the elements for a *prima facie* case of discrimination, the burden shifts to defendant to proffer legitimate, nondiscriminatory reasons for its decision to not pay plaintiff the raise associated with the promotion. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253 (holding that the presumption that intentional discrimination occurred raised by plaintiff's *prima facie* case may be rebutted by the employer's articulation of a legitimate, nondiscriminatory reason for its adverse employment action). If this is done, plaintiff retains the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001); Johnson v. Booker T. Washington Broad. Servs., 234 F.3d at 507 n.6. Once defendant offers legitimate, nondiscriminatory reasons for the employment action, plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by defendant were not its true reasons, but were a pretext for discrimination. Reeves v. Sanderson Plumbing Prods., 533 U.S. at 143; Damon v. Fleming Supermarkets of Fla., 196 F.3d at 1361; Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 658 (11th Cir. 1998).

Defendant proffers several legitimate nondiscriminatory reasons for plaintiff's discharge. First, Schley was not in fact

-15-

promoted and therefore he was not owed a raise. Second, the business climate changed around August 2001, prompting Stock Building to restructure the Rebar Department, combining the position of Production Manager and Division Manager. (Docs. #50-8, p. 30; #50-9, p. 1.) Third, Schley was not qualified for the Production Manager position, even if such position had not been cancelled. Finally Stock Building argues that Dunn was capable of handling both positions.

The Court has already determined that whether Schley was promoted and whether he was qualified create issues of material fact and therefore are jury questions. As for the business environment changing, the Court finds that this constitutes a legitimate, nondiscriminatory reason for not promoting plaintiff. Therefore, the burden shifts back to plaintiff to discredit defendant's proffered explanation for its decision and to show that the actual basis for its employment decision was racial animus.

**D. Pretext**

Plaintiff now bears the burden of offering enough probative evidence so that a reasonable jury might conclude that defendant's reasons for termination were a pretext for the discrimination or retaliation. See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d at 658; Reeves v. Sanderson Plumbing Prods., 533 U.S. at 143; Pennington v. City of Huntsville, 261 F.3d at 1266. In the summary judgment context, a court must conduct this inquiry by determining whether a jury "could reasonably infer discrimination if the facts

presented (by the plaintiff) remained unrebutted." Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996). The court "must avoid weighing conflicting evidence or making credibility determinations. Rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). After reviewing the entire record, the Court finds that plaintiff has made this requisite showing, and the evidence presented creates a jury issue.[4]

**E.   Punitive Damages**

In order to support a claim for punitive damages in a Title VII case, plaintiffs must show that the employer acted with "malice or with reckless indifference to the [plaintiff's] federally protected rights." 42 U.S.C. § 1981a(b)(1). The focus of the analysis is on the employer's state of mind. Kolstad v. American Dental Ass'n, 527 U.S. 526, 535 (1999); Alexander v. Fulton County, 207 F.3d 1303, 1337 (11th Cir. 2000). In addition to showing that defendant acted with malice or reckless indifference, plaintiff must also show that either the discriminating employee was "higher up the corporate hierarchy,", or that higher management approved of the conduct. Splunge v. Shoney's, 97 F.3d 488, 491 (11th Cir.

---

[4]Hairston v. Gainesville Sun Publ'g. Co., 9 F.3d 913, 920-21 (11th Cir. 1993)(finding that when determining whether plaintiff satisfied his/her burden under the pretext portion of the analysis, the Court may consider evidence already introduced to establish the *prima facie* case).

Case 2:05-cv-00306-JES-DNF   Document 66   Filed 02/06/07   Page 18 of 18 PageID 2079

1996).

In the present case, a reasonable jury could find that the Defendant's failure to process Plaintiff's promotion pay raise and ignoring Schley's repeated complaints to the Fort Myers management team constitutes malicious or recklessly indifferent behavior. (Doc. #1, ¶ 7(c)).  The Court also finds that upper management was put on notice of the alleged discriminatory acts as Schley notified everyone in his chain of command including Baroni, the manager for the Fort Myers office, as well as his replacement Brissette.

Accordingly, it is now

**ORDERED**:

Defendant's Motion for Summary Judgment (Doc. #49) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __6th__ day of February, 2007.

                                          _____
                                          JOHN E. STEELE
                                          United States District Judge

Copies:
Counsel of record